UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In Re:                                                   :
                                                         :  Case No. 18-45047 (NHL)
Vincenzo Farina,                                         :
                                                         :  Chapter 7
       Debtor.                                          :
                                                         :
                                                         :
---------------------------------------------------------x
                                                         :
William K. Harrington, as the United States              :  Adv. Proceeding No. 21-
Trustee, Region 2,                                       :
                                                         :
       Plaintiff,                                       :
                                                         :
-against-                                                :
                                                         :
Vincenzo Farina,                                         :
                                                         :
       Defendant.                                       :
---------------------------------------------------------x

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE
PURSUANT TO 11 U.S.C. §§ 727(a)(4)**

      William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), by and through the undersigned attorney, as and for his complaint objecting to the discharge of Vincenzo Farina (the "Debtor"), pursuant to 11 U.S.C. § 727(a)(4) respectfully alleges as follows:

**PARTIES**

1. The Plaintiff, William K. Harrington, is the United States Trustee for Region 2, with offices located at 201 Varick Street, Suite 1006, New York, New York.

2. The Defendant is the Debtor in the above-captioned bankruptcy case and, upon information

- 1 -

and belief, is an individual residing at 8633 Bay 16th Street, Brooklyn, New York.

## JURISDICTION, VENUE AND STATUTORY PREDICATES FOR RELIEF

3. Plaintiff William K. Harrington is the United States Trustee for Region 2. United States Trustees are officials of the Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases and trustees. *See* 28 U.S.C. §§ 581-589. The United States Trustee possesses standing to pursue his complaint under 11 U.S.C. § 307 and § 727(c)(1).

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

5. This adversary proceeding relates to the case of *In re Vincenzo Farina*, Case No. 20-42267 (NHL), a chapter 7 bankruptcy case that is currently pending before the United States Bankruptcy Court for the Eastern District of New York, Brooklyn, New York.

6. Venue is proper pursuant to 28 U.S.C. § 1409(a).

7. This cause of action constitutes a core proceeding as defined by 28 U.S.C. § 157(b)(2)(J).

8. The statutory and other predicates for the relief sought in this matter are 11 U.S.C. §§ 105(a), 541, 727 and 550 and Rules 4004(a) and 7001 of the Federal Rules of Bankruptcy Procedure.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. General Background

9. On September 4, 2018 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under chapter 7 of the Bankruptcy Code. *See* Case Docket, ECF Doc. No. 1.

10. On the Petition Date, the Debtor filed his Petition, Schedules, Means Test, and Statement of Financial Affairs (the "SOFA"). *See* ECF Doc. No. 1.

11. The Debtor signed his Petition, Schedules, Means Test, and SOFA under penalty of perjury. *See* ECF Doc. No. 1.

12. Lori Lapin Jones, Esq. (the "Trustee") was appointed as the interim trustee of the Debtor's estate, and, pursuant to 11 U.S.C. § 702(d), became the permanent trustee.

13. The Debtor filed amended Statements of Intention on September 11, 2018 and October 21, 2018, respectively. *See* ECF Doc. Nos. 8, 15.

14. The first date set for the meeting of creditors, pursuant to 11 U.S.C. § 341(a) (the "341 Meeting") was October 5, 2018.

15. The initial deadline for the United States Trustee to file an action seeking to deny the Debtor's discharge was December 4, 2018.

16. Pursuant to a So Ordered Stipulation signed on July 1, 2021, the United States Trustee's last date to file an action seeking to deny the Debtor's discharge is July 6, 2021. *See* ECF Doc. No. 108.

   **B.**   **The Debtor's Schedules and Statement of Financial Affairs**

   (i)   Assets

17. According to Schedule A/B, the Debtor does not own any real estate. *See* Schedule A/B, ECF Doc. No. 1.

18. The Debtor's personal property assets aggregated $36,362 as of the Petition Date. *See id.*

19. According to Schedule A/B, the Debtor's personal assets included, as of the Petition Date, *inter alia*, (i) interests in two vehicles, valued at $7,687 in the aggregate (the "Vehicles"), (ii) artworks valued at $25,000, (iii) cash in bank accounts aggregating $225, (iv) household goods and furnishings aggregating $1,500, and (v) interests in a number of business entities (collectively, the "Businesses") with an either "unknown" or $0 value. *See* Schedule A/B, ECF

Doc. No. 1.

20. The Debtor's ownership interests in the Businesses include (a) a 50% ownership interest in Black Book Management Group, Inc. ("Black Book"), which has been operating since June 2015, (b) a 100% interest in Bold Street Coffee LLC ("Bold Street"), a food industry business which has been operating since October 2015, (c) a 100% ownership interest in Macchinetta Caffe Inc. ("Macchinetta"), a food industry business which has been operating since October 2016, and (d) a 100% ownership interest in Twenty One 12 Consultants Inc. ("Twenty One"), a consulting business which has been operating since March 2014. *See* Schedule A/B; *see also* Statement of Financial Affairs (the "SOFA"), question 27, ECF Doc. No. 1.

    (ii)    <u>Liabilities</u>

21. According to the Debtor's petition, the Debtor's liabilities are primarily "business debts." *See* Voluntary Petition, ECF Doc. No. 1.

22. According to Schedule D, the Debtor's secured liabilities aggregate $16,008, and relate to one of the Debtor's Vehicles. *See* Schedule D, ECF Doc. No. 1.

23. According to Schedule E/F, the Debtor has no priority unsecured creditors. *See* Schedule E/F, ECF Doc. No. 1.

24. The Debtor's non-priority unsecured creditor claims aggregate $2,053,648. *See* Schedule E/F, ECF Doc. No. 1.

25. According to Schedule E/F, the Debtor owes a disputed amount of $1 million to Joseph Amadeo, a claim related to a pending lawsuit. *Id.*

26. According to Schedule E/F, the Debtor owes a disputed amount of $1 million to United Biotech New York, a claim related to a pending lawsuit. *Id.*

27. According to Schedule G, the Debtor has leases with Audi Financial Services and Santander Consumer USA. *See* Schedule G, ECF Doc. No. 1.

28. According to Schedule H, Black Book, Bold Street, Machinetta, and Twenty One are co-debtors with the Debtor on liabilities owed to Joseph Amadeo and United Biotech New York. *See* Schedule H, ECF Doc. No. 1.

    (iii)    <u>Income, Expenses, and Employment</u>

29. According to Schedules I and J and the SOFA, the Debtor is married and has no dependents. *See* Schedule I, J, SOFA, ECF Doc. No. 1

30. According to Schedule I, as of the Petition Date, the Debtor was self-employed and working for Black Book for the period of three years preceding the Petition Date. *See* Schedule I, ECF Doc. No. 1.

31. In Schedule I, the Debtor stated that his sole source of income was family assistance aggregating $2,000 per month. *Id.*

32. The Debtor did not disclose any income for his non-filing spouse on his Schedule I. *See* Schedule I, ECF Doc. No. 1.

33. According to the SOFA, the Debtor earned (i) $86,653 in gross income in 2016 and (ii) $70,371 in gross income in 2017. *See* SOFA, questions 4 and 5, ECF Doc. No. 1.

34. According to Schedule J, the Debtor's expenses, as of the Petition Date, aggregated $3,282 per month. *See* Schedule J, ECF Doc. No. 1.

35. The Debtor's expenses included, *inter alia*, (i) transportation expenses of $1,000 per month, (ii) vehicle insurance expenses of $1,000 per month, and (iii) car payments of $212 per month. *Id.*

36. According to Schedule J, as of the Petition Date, the Debtor had a deficit of $1,282 per month. *Id.*

      (iv) <u>Gifts, Losses and Transfers</u>

37. In response to question 6 of the SOFA, the Debtor did not disclose any payments to creditors of $6,425 or more made during the 90 days preceding the Petition Date. *See* SOFA, question 6, ECF Doc. No. 1.

38. In response to questions 7 and 8 of the SOFA, the Debtor did not disclose any payments or transfers to insiders during the period of one year preceding the Petition Date. *See* SOFA, questions 7, 8.

39. In response to questions 13 and 14 of the SOFA, the Debtor averred that he made no gifts or charitable contributions to anyone in amounts exceeding $600 per recipient within two years preceding the Petition Date. *Id.*, questions 13, 14.

40. In response to question 15 of the SOFA, the Debtor disclosed that he had suffered aggregate losses of $2.5 million related to gambling in 2017 and 2018. *Id.*, question 15.

41. In response to question 18 of the SOFA, the Debtor did not list any transactions outside the ordinary course of business made during the period of two years preceding the Petition Date. *See* SOFA, question 18.

    C.    **<u>United States Trustee's Investigation of the Debtor's Case</u>**

42. By letter dated September 12, 2018 (the "September Letter"), the United States Trustee requested that the Debtor provide to the United States Trustee, *inter alia*, copies of the Debtor's business and personal bank statements for a period of two years preceding the Petition Date (the "Bank Statements"). *See* Motion of the United States Trustee for Examination of the Debtor Under Bankruptcy Rule 2004 (the "UST Motion"), Declaration of Nazar Khodorovsky (the

"Khodorovsky Declaration"), ¶ 5, ECF Doc. No. 56.

43. On September 13, 2018, Debtor's then-counsel Fred S. Kantrow's, Esq. ("Former Counsel") informed the United States Trustee by electronic mail message (the "September Email") that to the extent the Debtor lacked copies of the Bank Statements, Counsel could seek entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") so as to obtain the Bank Statements and provide them to the United States Trustee. *See id.*, ¶ 6.

44. On November 28, 2018, the Debtor filed a motion (the "Debtor Motion") pursuant to Bankruptcy Rule 2004 seeking permission to subpoena bank statements of Macchinetta and Bold Street from Chase Bank, N.A. ("Chase.") *See* ECF Doc. No. 30.

45. According to the Debtor Motion, Chase had previously closed the accounts of Machinetta and Bold Street because these accounts were overdrawn. *See id.*

46. The Court granted the Debtor Motion by order signed on March 5, 2019. *See* ECF Doc. No. 36.

47. On April 3, 2019, Former Counsel filed a motion to withdraw as counsel to the Debtor (the "Withdrawal Motion"). *See* ECF Doc. No. 40.

48. The Court granted the Withdrawal Motion by order signed on July 20, 2019 (the "Withdrawal Order"). *See* ECF Doc. No. 52.

49. By electronic mail message dated May 15, 2019 Former Counsel informed the United States Trustee that he had received from Chase copies of the Bank Statements requested in the Debtor Motion. *See* Khodorovsky Decl., ¶ 10.

50. By electronic mail message dated May 21, 2019, Former Counsel informed the United

States Trustee that he considered himself adverse to the Debtor and could not turn over to the United States Trustee copies of the Bank Statements he had received from Chase. *See id.*, ¶ 11.

51. After the entry of the Withdrawal Order, the Debtor remained *pro se* in this chapter 7 case until April 20, 2021 when Marc A. Pergament, Esq. ("Current Counsel") filed a notice of appearance in this case as counsel to the Debtor. *See* ECF Doc. No. 101.

52. In a motion filed on August 12, 2019 (the "Creditor Motion") creditors Joseph Amedeo and United Biotech New York, Inc. (collectively, the "Creditors") claimed that the documents they had obtained from Chase (prior to the Petition Date) as part of related state court litigation appeared to show that "monies were transferred from an account or accounts owned or controlled by the Debtor to various other accounts, in amounts that appear to be out of the ordinary course of the Debtor's business activities." See Creditor Mot., ECF Doc. No. 53.

53. On September 12, 2019, the United States Trustee filed the UST Motion, seeking, *inter alia*, (i) an examination of the Debtor under oath pursuant to Bankruptcy Rule 2004 and (ii) directing the Debtor to provide the Bank Statements to the United States Trustee. *See* ECF Doc. No. 56.

54. The Court granted the UST Motion by order signed on December 1, 2019 (the "Rule 2004 Order"). *See* ECF Doc. No. 60.

55. By electronic mail message dated September 15, 2020, the Debtor consented to allowing the Creditors to provide the Bank Statements that the Creditors had in their possession to both the Debtor and the United States Trustee.

56. By electronic mail message dated September 18, 2020, the Creditors provided the Bank Statements to the Debtor and the United States Trustee.

57. The Bank Statements reveal, *inter alia*, the following transactions (collectively, the "Transactions"):

| DATE | BANK | LAST 4 DIGITS OF THE ACCOUNT NUMBER | ACCOUNT HOLDER | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|
| 09/30/17 | Chase | 9875 | Debtor | Withdrawal | $20,000 |
| 09/30/17 | Chase | 9875 | Debtor | Withdrawal | $10,000 |
| 10/07/17 | Chase | 9875 | Debtor | Withdrawal | $208,000 |
| 10/07/17 | Chase | 9875 | Debtor | Cashier's Check payable to "Giacomo Pollari" | $208,000 |
| 10/09/17 | Chase | 9875 | Debtor | Deposit | $211,000 |
| 10/10/17 | Chase | 9875 | Debtor | Withdrawal | $30,000 |
| 10/10/17 | Chase | 9875 | Debtor | Withdrawal | $90,000 |
| 10/10/17 | Chase | 9875 | Debtor | Withdrawal | $40,000 |
| 10/11/17 | Chase | 9875 | Debtor | Check No. 1261 payable to "Antonio Maivolo" | $1,800 |
| 10/23/17 | Chase | 9875 | Debtor | Check No. 1263 payable to "Dan Sullivan" | $30,000 |
| 10/27/17 | Chase | 9875 | Debtor | Withdrawal | $10,000 |
| 11/06/17 | Chase | 9875 | Debtor | Transfer to Debtor from Sdsr Real Estate Holdings LLC Lakewood NJ Ref: Loan – 3 Months Part 2 | $500,000 |
| 11/06/17 | Chase | 9875 | Debtor | Wire Transfer from Debtor to Joe Rivisto Bronx NY | $25,000 |
| 11/06/17 | Chase | 9875 | Debtor | Wire Transfer from Debtor to Kim Amadeo | $62,319.63 |
| 11/07/17 | Chase | 9875 | Debtor | Transfer to Debtor from Sdsr Real Estate Holdings LLC Lakewood NJ Ref: Loan – 3 Months Final 25K for 1 Million Total | $25,000 |
| 11/15/17 | Chase | 9875 | Debtor | Withdrawal | $785,000 |
| 11/15/17 | Chase | 9875 | Debtor | Transfer to Debtor from Gino Pollari Arlington, MA | $200,000 |
| 11/30/17 | Chase | 9875 | Debtor | Quickpay with Zelle Payment to Nico | $2,000 |
| 12/06/17 | Chase | 9875 | Debtor | Transfer from Debtor to Sdsr Real Estate Holdings LLC Lakewood NJ Ref: Payment For Vincenzo Farina | $5,000 |

| DATE | BANK | LAST 4 DIGITS OF THE ACCOUNT NUMBER | ACCOUNT HOLDER | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|
| 12/07/17 | Chase | 9875 | Debtor | Check No. 1268 payable to "Shawn Sosnik" | $177,000 |
| 12/09/17 | Chase | 9875 | Debtor | Deposit | $177,000 |
| 11/15/17 | Chase | 9875 | Debtor | Check No. 1269 payable to "Cash" | $5,000 |
| 01/02/18 | Chase | 9875 | Debtor | Wire Transfer from Debtor to Anthony Rivera Upper Saddle River NJ | $5,000 |
| 01/18/18 | Chase | 9875 | Debtor | Check Deposited from Shawn Sosnik | $140,000 |
| 01/24/18 | Chase | 9875 | Debtor | Withdrawal | $450,000 |
| 01/25/18 | Chase | 9875 | Debtor | Check Deposited from Richard Wachtell and Francine Wachtell | $60,000 |

58. On May 20, 2021, pursuant to the Rule 2004 Order, the United States Trustee examined the Debtor under oath (the "Rule 2004 Examination").

(i) Debtor's Testimony at the Rule 2004 Examination

59. The Debtor testified at the Rule 2004 Examination that on September 30, 2017 he withdrew $20,000 in cash (the "First Sept 30 Withdrawal") from his personal bank account at Chase (the "Debtor Chase Account")

60. The Debtor could not recall what he did with the funds from the First Sept 30 Withdrawal.

61. The Debtor testified at the Rule 2004 Examination that on September 30, 2017 he withdrew $10,000 in cash from the Debtor Chase Account (the "Second Sept 30 Withdrawal").

62. The Debtor testified that he could not recall what he did with the funds from the Second Sept 30 Withdrawal.

63. The Debtor testified that on October 7, 2017 he withdrew $208,000 from the Debtor Chase Account to pay Giacomo Pollari via a cashier's check (the "October 7 Cashier's Check").

64. The Debtor testified that the October 7 Cashier's Check was intended to repay funds that Giacomo Pollari ("Mr. Pollari"), a friend of the Debtor, had loaned to the Debtor.

65. The Debtor stated that there was no written agreement between the Debtor and Mr. Pollari.

66. The Debtor stated that he had to repay Mr. Pollari as soon as possible.

67. The Debtor stated that he could not recall the source of funds for $208,000 that he had deposited into the Debtor Chase Account on October 9, 2017.

68. The Debtor testified that on October 10, 2017, he withdrew $90,000 in cash from the Debtor Chase Account (the "October 10 Withdrawal").

69. The Debtor stated that he used the funds from the October 10 Withdrawal to pay his gambling debts.

70. The Debtor could not recall the names of the individuals he paid back with funds from the October 10 Withdrawal.

71. The Debtor stated that the gambling debts related to the October 10 Withdrawal related to online gambling, including sports gambling.

72. The Debtor could not recall the names of any websites which he had used to gamble.

73. The Debtor testified that if he had lost money gambling online, he had to pay the losses in cash.

74. The Debtor stated that on October 23, 2017 he issued a check from the Debtor Chase Account for $30,000 payable to Dan Sullivan (the "October 23 Check").

75. The Debtor stated that the October 23 Check was issued to repay Dan Sullivan, a friend of the Debtor, for the gambling debt that Dan Sullivan had paid on the Debtor's behalf.

76. The Debtor testified that he withdrew $10,000 in cash from the Debtor Chase Account on October 27, 2017 (the "October 27 Withdrawal") to pay back gambling debts.

77. The Debtor stated that he had used the funds from the October 27 Withdrawal to pay gambling debts to a gentleman named "Anthony," whose last name the Debtor did not know.

78. The Debtor testified that on November 6, 2017 he received a $500,000 deposit into the Debtor Chase Account (the "SDSR Deposit") from SDSR Holdings LLC of Lakewood, New Jersey ("SDSR")

79. The Debtor stated that, through a friend, he had received a loan from SDSR (the "SDSR Loan"), an entity the Debtor was not familiar with.

80. The Debtor stated that the SDSR Loan was a three-month loan with 20% interest.

81. The Debtor stated that the SDSR Loan was not accompanied by a written agreement.

82. The Debtor stated that he used the funds from the SDSR Loan to pay back both gambling and non-gambling debts.

83. The Debtor stated that he had borrowed a total of $1 million from SDSR payable in three months at 20% interest.

84. The Debtor stated that on November 6, 2017 he had transferred $25,000 to Joe Rivisto of Bronx, NY from the Debtor Chase Account (the "November 6 Transfer").

85. The Debtor stated that the funds from the November 6 Transfer related to a gambling debt that Joe Rivisto had paid on the Debtor's behalf.

86. The Debtor stated that on November 6, 2017 he had transferred $62,319.63 to Kim Amadeo (the "Amadeo Transfer") from the Debtor Chase Account.

87. The Debtor stated that he had transferred the funds related to the Amadeo Transfer to the mother of Joseph Amadeo to pay back a loan that Joseph Amadeo had given to the Debtor.

88. The Debtor testified that on November 15, 2017 he had received a loan of $100,000 from a friend named Gino Pollari (the "November Loan").

89. The Debtor stated that the funds from the November Loan were deposited into the Debtor Chase Account and were used by the Debtor to pay back gambling debts.

90. The Debtor stated that he could not recall if he had ever repaid the November Loan he owed to Gino Pollari.

91. The Debtor testified that on November 14, 2017 he withdrew $785,000 in cash from the Debtor Chase Account (the "November 14 Withdrawal").

92. The Debtor stated that he had used the funds from the November 14 Withdrawal to pay back gambling debts and interest on loans owed to various individuals.

93. The Debtor stated that he had placed the funds from the November 14 Withdrawal into a briefcase and traveled from a Chase branch in midtown Manhattan, New York to Brooklyn, New York with a personal bodyguard, and, once the bodyguard had departed, the Debtor distributed the funds to various individuals.

94. The Debtor stated that in December 2017 he transferred $5,000 to SDSR to pay back a portion of the SDSR Loan.

95. The Debtor testified that on December 7, 2017 he had issued a check for $177,000 (the "December 7 Check") to Shawn Sosnik ("Mr. Sosnik").

96. The Debtor stated that he issued the December 7 Check to Mr. Sosnik to pay back the moneys he owed to Mr. Sosnik, a person who the Debtor described as a friend of a friend.

97. The Debtor stated that he had borrowed a short-term loan from Mr. Sosnik (the "Sosnik Loan"), which was subsequently repaid in full.

98. The Debtor testified that he had borrowed $177,000 in December 2017 from a friend named Anthony to ensure that the December 7 Check would not bounce (the "December Loan").

99. The Debtor did not know the last name of the gentleman who provided the December Loan.

100. The Debtor stated that he never repaid the December Loan.

101. The Debtor testified that on November 15, 2017 he issued a $5,000 check payable to cash (the "November 15 Check").

102. The Debtor stated that the funds from the November 15 Check were used to pay back moneys owed to a friend named James Jacobson.

103. The Debtor testified that on January 2, 2018 he had transferred $5,000 to an Anthony Rivera (the "January Transfer").

104. The Debtor testified that the January Transfer related to repayment in full of sums owed to Anthony Rivera.

105. The Debtor testified that he had borrowed additional funds from Mr. Sosnik that a friend of his had repaid on his behalf.

106. The Debtor testified that on January 24, 2018 he withdrew $450,000 from the Debtor Chase Account (the "January Withdrawal").

107. The Debtor could not recall what he did with the funds from the January Withdrawal.

108. The Debtor stated that, through a friend, he had received a $60,000 loan from Richard Wachtel and Francine Wachtel (the "Wachtel Loan").

109. The Debtor testified although he did not repay the Wachtel Loan, a friend who introduced the Debtor to Richard Wachtel and Francine Wachtel paid back the Wachtel Loan on his behalf.

110. The Debtor testified that he has been battling gambling addiction for about twenty years.

111. The Debtor testified that, on the Petition Date, he was self employed at Black Book.

112. The Debtor stated that Black Book was engaged in facility maintenance, including for businesses in the luxury retail industry.

113. The Debtor stated that Black Book stopped doing business some time after the Petition Date.

## FIRST CLAIM FOR RELIEF

## Denial of Discharge Under 11 U.S.C. § 727(a)(4)

114. The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 113.

115. Title 11 U.S.C. § 727(a) provides, in part, that:

> (a) The Court shall grant a debtor a discharge, unless--
> . . .
>> (4) the debtor knowingly and fraudulently, in or in connection with the case (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A).

116. The Debtor signed the Petition, Schedules, Means Test, and SOFA under the penalty of perjury.

117. The Debtor testified under oath at the Rule 2004 Examination.

118. According to the SOFA, the Debtor made no payments or transfers to insiders during the period of one year preceding the Petition Date.

119. According to the SOFA, the Debtor made no gifts or charitable contributions to anyone in amounts exceeding $600 per recipient within two years preceding the Petition Date.

120. According to the SOFA, the Debtor made no transfers outside of the ordinary course of business during the period of two years preceding the Petition Date.

121. With a year preceding the Petition Date, the Debtor withdrew hundreds of thousands of dollars via cash, wire transfer, and checks from the Debtor Chase Account (the "Transfers") allegedly to either (i) to pay back gambling debts or (ii) pay back individuals who had paid the Debtor's gambling debts on the Debtor's behalf.

122. The Debtor's Transfers included the following:

(a) The October 10 Withdrawal of $90,000 in cash; and

(b) The October 23 Check for $30,000, a repayment of debts that Dan Sullivan, a friend of the Debtor, paid on the Debtor's behalf; and

(c) The October 27 Withdrawal of $10,000 in cash used to repay "Anthony," whose last name the Debtor did not know; and

(d) The November 6 Transfer of $25,000 to Joe Rivisto to repay a gambling debt that Joe Rivisto had paid on the Debtor's behalf; and

(e) The November 14 Withdrawal of $785,000 in cash to pay back gambling debts and interest on loans owed to various undisclosed individuals; and

(f) A $5,000 partial repayment of the SDSR Loan in December 2017.

123. In addition to the Transfers, within a year of the Petition Date, the Debtor made a number of further loan repayments out of the Debtor Chase Account (the "Repayments"):

(a) The October 7 Cashier's Check to repay $208,000 owed to Mr. Pollari; and

(b) The Amadeo Transfer, a repayment of $62,913.63 owed to Joseph Amadeo; and

(c) The November 15 Check, a repayment of $5,000 owed to a friend named James Jacobson; and

(d) The December 7 Check, a repayment of $177,000 owed to Mr. Sosnik; and

(e) The January Transfer, a repayment of $5,000 owed to an Anthony Rivera.

124. In addition to the Transfers and the Repayments, on January 24, 2018, a little over seven months preceding the bankruptcy filing, the Debtor undertook the January Withdrawal from the Debtor Chase Account – a withdrawal of $450,000 whose purposes the Debtor could not explain.

125. The Transfers, the Repayments, and the January Withdrawal aggregate over $1.8

million.

126. The Transfers, the Repayments, and the January Withdrawal were not disclosed on the Debtor's Schedules and SOFA.

127. The Debtor was obligated to disclose the Transfers, the Repayments (and any unpaid loans), and the January Withdrawal on his Schedules and SOFA.

128. The Transfers, the Repayments, and the January Withdrawal were outside of the Debtor's ordinary course of business or financial affairs.

129. The Transfers, the Repayments, and the January Withdrawal relate materially to the Debtor's bankruptcy case.

130. The Debtor's bankruptcy Schedules and SOFA are false, misleading, and/or incomplete because they do not contain material information regarding the Transfers, the Repayments, and the January Withdrawal.

131. The Debtor knew or should have known that his Schedules and SOFA executed under the penalty of perjury, were false, but he still caused them to be filed with the Court.

132. By failing to disclose the January Withdrawal, the Transfers, and the Repayments in his Schedules and SOFA the Debtor sought to defraud his creditors.

133. The Debtor's failure to disclose the January Withdrawal, the Transfers and the Repayments in his Schedules and SOFA deprived the Debtor's creditors of material information regarding the Debtor's assets and financial affairs.

134. The Debtor's failures to disclose the January Withdrawal, the Transfers, and the Repayments in his Schedules and SOFA evidence his intent to defraud his creditors.

135. The Debtor's false oaths and accounts which appeared in his Schedules and SOFA and in his Rule 2004 Examination testimony warrant denial of the Debtor's discharge under 11

U.S.C. § 727(a)(4).

**PRAYER FOR RELIEF**

WHEREFORE, the United States Trustee respectfully requests that the Court enter judgment denying the Debtor's discharge on the United States Trustee's First Claim for Relief under 11 U.S.C. §727(a)(4), and grant other relief as is just.

Dated: West Orange, New Jersey
       July 5, 2021

                                WILLIAM K. HARRINGTON
                                UNITED STATES TRUSTEE, REGION 2

By:   */s/ Nazar Khodorovsky*
        Nazar Khodorovsky
        Trial Attorney
        201 Varick Street, Suite 1006
        New York, New York 10014
        Tel. No. (212) 510-0500
        Fax No. (212) 668-2255